NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASDAL HOLDINGS, LLC, et al., | : | **Civil Action No. 22-04158-KSH-AME** |
| Plaintiffs, | : | |
| | : | **OPINION and ORDER** |
| v. | : | |
| | : | |
| IDEASOIL, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

**ESPINOSA, U.S.M.J.**

This matter comes before the Court on the initial and supplemental applications by Defendant IdeaSoil, LLC ("Defendant"), which seek an award of fees and costs as sanctions under Federal Rule of Civil Procedure 37. [D.E. 61 and 72]. Those applications follow this Court's September 6, 2024 Opinion and Order granting Defendant's motion for sanctions against Plaintiffs and their now-former counsel, Thomas Lenney ("Mr. Lenney"), including reasonable attorneys' fees and costs incurred in Defendant's efforts to compel compliance with the discovery rules and this Court's orders. [*See* D.E. 56 at 11]. Plaintiff Asdal Holdings, LLC opposes the amount of fees Defendant seeks. [D.E. 76]. The Court has carefully reviewed Defendant's applications and Plaintiff's opposition and, for the following reasons, awards Defendant $10,434.25 in fees and costs, pursuant to Rule 37.

I.   **RELEVANT PROCEDURAL HISTORY**

The Court's September 6, 2024 Order (the "September 6 Order") stated that any award would account for the time and expense associated with Defendant's preparation and filing of its April 15, 2024 motion for sanctions, and for "any other efforts made to obtain overdue discovery

1

responses from Plaintiffs following the Court's May 31, 2023 Order."[1] [D.E. 56 at 11]. The September 6 Order directed Defendant to submit an application setting forth the time spent on these compensable activities, supported by detailed documentation, and provided Plaintiffs and Mr. Lenney an opportunity to file written opposition addressing the reasonableness of the amount sought by Defendant. [*See* D.E. 56 at 12].

Defendant filed its application for fees on September 27, 2024. [D.E. 61]. On October 3, 2024, Brian P. Graffeo ("Mr. Graffeo"), an attorney at Williams, Graffeo & Stern, LLC ("WGS"), filed a letter, stating that Mr. Lenney had "been disassociated from our firm as of September 3, 2024."[2] [D.E. 62]. The letter also asserted that WGS had spent "weeks attempting to address the pending motion," but that Mr. Lenney had not returned any communications, and "[f]urther complicating matters," WGS had been unable to "obtain direction from Plaintiffs" as to "how to proceed," or "whether Plaintiffs would like to continue to retain [WGS] to represent their interests in this matter." [*Id.*]. On October 11, 2024, instead of filing a response to the reasonableness of Defendant's fee application, WGS filed a letter, which explained that it "prepared opposition to Defendant's application," but that "Plaintiff has not provided approval or

---

[1] When this matter was removed to federal court on June 20, 2022, the Complaint listed Plaintiffs as Asdal Holdings, LLC; Restless Creation, LLC: William Asdal; and Annie Asdal, and listed as Defendants IdeaSoil, LLC; Dean Horowitz; and Alexandra Horowitz. [D.E. 1-1 at 2-3]. On January 11, 2024, the District Court dismissed the claims by Plaintiffs Restless Creation, LLC; William Asdal; and Annie Asdal against IdeaSoil, LLC, [D.E. 27], and later, on May 15, 2024, the District Court dismissed the claims against Defendants Dean Horowitz and Alexandra Horowitz pursuant to Rule 4(m). [D.E. 33, 43]. As of May 15, 2024, Asdal Holdings, LLC is the sole Plaintiff, and IdeaSoil, LLC is the sole Defendant. Still, concerning failed discovery obligations, this Court's September 6 Order observed that while Asdal Holdings, LLC "is the remaining plaintiff in this action, Restless Creation, LLC, William Asdal, and Annie Asdal were equally at fault at least until their claims were dismissed on May 15, 2024." [D.E. 56 at 10 n. 8]. Therefore, this Opinion refers to all Plaintiffs—Asdal Holdings, LLC; Restless Creation, LLC: William Asdal; and Annie Asdal—unless specified otherwise.

[2] However, Mr. Lenney filed the Complaint in this action, [D.E. 1-1 at 8], and remained Plaintiffs' counsel during all times relevant to the sanctions motion. Thus, all references herein to "Plaintiffs' counsel" pertain to him alone. Although he no longer represents Plaintiff, Mr. Lenney remains subject to this Court's inherent authority to regulate the conduct of attorneys who appear before it, *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 561 (3d Cir. 1985), and to the imposition of sanctions authorized by Rule 37(b)(2)(C).

2

consent" for its filing. [D.E. 64]. In that letter, WGS requested permission to file a motion to withdraw as counsel. [*Id.*]. In response to WGS's request, Defendant requested to file a supplement to its application for attorneys' fees. [*See* D.E. 67].

This Court granted Defendant's request to supplement its application, and WGS's request for leave to file a motion to withdraw as counsel. [D.E. 67]. The Court directed WGS to file its motion by November 8, 2024, and directed Defendant to file its supplement by December 13, 2024. [*Id.*]. Upon request, the Court extended WGS's deadline to November 22, 2024. [D.E. 69]. However, on that day, instead of filing a motion to withdraw, WGS filed a letter stating it would continue to represent Plaintiff Asdal Holdings, LLC, and requesting "limited reconsideration" of the September 6 Order so that "any sanctions levied for perceived misconduct be levied solely against Mr. Lenney" and not Plaintiffs. [D.E. 70]. Although Plaintiffs had not yet filed any opposition to Defendant's application for attorneys' fees, the November 22 letter also requested leave to submit "more detailed Opposition." [*Id.*]. Defendant filed its supplement on December 13, 2024. [*See* D.E. 72].[3]

The Court denied Plaintiff's untimely request for "limited reconsideration," as it was filed seventy-seven days after entry of the September 6 Order. [*See* D.E. 73]. However, the Court granted Plaintiffs leave to file late opposition to Defendant's September 27 fee petition and to timely oppose its December 13 supplement. [*Id.*]. Plaintiffs filed opposition on January 17, 2025, and Defendant filed a reply on January 31, 2025. [*See* D.E. 76 and 77].

## II.   THE FEE PETITIONS

Defendant's September 27 fee petition is supported by a declaration of its attorney Robert A. Mintz ("Mr. Mintz"), of the firm McCarter & English, LLP (the "First Mintz Declaration").

---

[3] Defendant's September 27, 2024 fee application and December 13, 2024 supplement are together hereinafter referred to as "the fee petitions."

[D.E. 61]. The First Mintz Declaration states that Defendant seeks a total of $19,492 in attorneys' fees, representing 24.2 hours between June 1, 2023, and May 14, 2024, that Mr. Mintz and his colleague, Brian W. Carroll ("Mr. Carroll"), assert they spent on compensable activities multiplied by each attorney's billing rates. [D.E. 61 at 2, ¶ 4]. The First Mintz Declaration explains that, from October 1, 2022, through September 30, 2023, Mr. Mintz's and Mr. Carroll's billing rates were $1,025 per hour and $620 per hour, respectively. [D.E. 61 at 3, ¶ 9]. From October 1, 2023, through September 30, 2024, Mr. Mintz's and Mr. Carroll's billing rates were $1,075 per hour and $690 per hour, respectively. [*Id.*].

Defendant's December 13 fee petition is also supported by a declaration by Mr. Mintz (the "Second Mintz Declaration"). [*See* D.E. 72]. The Second Mintz Declaration states that Defendant seeks an additional $6,277 in attorneys' fees, representing 6.8 hours that Mr. Mintz and Mr. Carroll assert they spent on compensable activities from September to December 2024. [D.E. 72 at 2, ¶ 4]. The Second Mintz Declaration explains that, effective October 1, 2024, to now, Mr. Mintz's and Mr. Carroll's billing rates are $1,150 per hour and $750 per hour, respectively. [*See* D.E. 72 at 6-7, ¶ 11]. Both the First and Second Mintz Declarations attached time records detailing the dates, hours, and nature of work performed.

Plaintiff Asdal Holdings, LLC presents two main arguments in opposition to Defendant's fee petitions. First, Plaintiff challenges Mr. Mintz's and Mr. Carroll's billing rates, asserting that, because this matter "is a simple breach of contract case," "it would have been more reasonable and appropriate for . . . one of the thirteen associates employed within the business litigation department" at McCarter & English, LLP to handle it. [D.E. 76 at 8-9]. Plaintiff also argues that Defendant never demonstrated "how or why the discovery sought in this matter was reasonable or necessary," adding that "Defense Counsel chose to bill more hours while seeking the Court's

4

intervention" "[d]espite receiving verbal confirmation from Mr. Lenny [sic] on February 21, 2024, that all documents had been produced." [*Id.* at 9-10].

Second, Plaintiff asserts that the "totality, or at the very least the majority, of Defendant's recovery should be as against Mr. Lenney," because "Plaintiff timely provided Mr. Lenney with discovery responses and relied upon Mr. Lenney to coordinate the production to Defendant." [*Id.* at 11-12]. In support of this assertion, Plaintiff provided a certification from William Asdal, President of Asdal Holdings, LLC, who states: (1) Plaintiff Asdal Holdings, LLC complied with discovery requests; (2) he was not aware of Mr. Lenney's delay in producing discovery; and (3) had he been made aware of Mr. Lenney's actions he "would have sought to rectify it." [*See* D.E. 76-4]. Therefore, Plaintiff argues, "[i]t would be unfair to assess sanctions against Plaintiff when it acted diligently in response to the information provided by Mr. Lenney." [D.E. 76 at 13].

### III. ANALYSIS

The party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of its request. *Interfaith Cmty. Org. v. Honeywell, Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). To do so, it must provide evidence "supporting the hours worked and rates claimed." *Id.* (quotations omitted). The opposing party then has the burden of challenging the reasonableness of the requested fee, "by affidavit or brief with sufficient specificity to give fee applicants notice." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

To determine the amount of a reasonable fee award, the Court must begin by calculating the lodestar, which is the "'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The lodestar is strongly presumed to yield a reasonable fee." *Washington v. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

However, the Court "has the discretion to make certain adjustments to the lodestar." *Rode*, 892 F.2d at 1183.

As an initial matter, the Court interprets Plaintiffs' assertion that "[t]he totality, or at the very least the majority, of Defendant's recovery should be as against Mr. Lenney," and that "it would be unfair to assess sanctions against Plaintiff," [D.E. 76 at 11], as a request for partial reconsideration of the September 6 Order and rejects such a request. This Court's September 6 Order imposed sanctions against Plaintiffs and its counsel after concluding that the record and "the history of this litigation show[] that Plaintiffs and Mr. Lenney have been grossly negligent with respect to their discovery obligations," which "result[ed] in unjustifiable delay and prejudice to [Defendant's] ability to defend this action efficiently and in a cost-effective manner." [D.E. 56 at 10]. After the September 6 Order was issued, Plaintiffs did not file a motion for reconsideration. It did not even timely submit a response concerning the reasonableness of the amount of fees Defendant sought, as the Court allowed in its September 6 Order. Instead, WGS filed letters, requesting leave to file a motion to withdraw as counsel.

This Court will not reconsider here its finding in the September 6 Order granting sanctions against both Plaintiffs and their counsel. Plaintiffs' request is improper, especially in light of the fact that the Court has already denied their prior, untimely reconsideration request. [*See* D.E. 73]. Local Civil Rule 7.1 requires a motion for reconsideration to be filed within fourteen days of entry of the original order. [*Id.*; *see* L. Civ. R. 7.1(i)]. Plaintiffs asserted their initial, late reconsideration argument seventy-seven days after the September 6 Order, and this second untimely bite at the reconsideration apple was filed more than 130 days after the September 6 Order. Moreover, Plaintiffs' position that they are "without fault for either the delay in the discovery response or Mr. Lenney's failure to meet pertinent deadlines" is contradicted by

6

the record and undermined by submissions even after the September 6 Order and Mr. Lenney's apparent departure from WGS, which reflect that Plaintiffs were not responsive to WGS, and that WGS could not obtain direction and did not receive sufficient communication from Plaintiffs to timely file an opposition to Defendant's fee petition. In fact, WGS filed its request to move to withdraw as counsel, in part, because it "has not been able to obtain direction from Plaintiffs as to not only how to proceed, but whether Plaintiffs would like to continue to retain our firm to represent their interests in this matter," and because "Plaintiff has not provided approval or consent to the filing of [opposition to Defendant's fee petition]." [*See* D.E. 62 and 64]. Accordingly, Plaintiffs' request that the Court apportion the totality or the majority of attorneys' fees against Mr. Lenney is denied. The Court will assess the attorneys' fee award against both Plaintiffs and Mr. Lenney after conducting an analysis of the reasonableness of the hourly rate and the reasonableness of the hours expended for activities covered in the September 6 Order. The Court will then apportion the amount of fees between Plaintiffs and Mr. Lenney.

    A.  **The Reasonableness of the Hourly Rate**

As part of calculating the lodestar, courts "must examine whether the requested hourly rate is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The hourly billing rate for services must be reasonable "given the geographical area, the nature of the services provided, and the experience of the lawyer." *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F. 3d 190, 195 n.1 (3d Cir. 2000)). "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). More specifically, courts "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates

7

prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183 (citing *Student Public Interest Research Grp. v. AT&T Bell Laboratories*, 842 F.2d 1436, 1447 (3d Cir. 1988); *Blum*, 465 U.S. at 895 n. 11).

Courts in this District have explained that the reasonableness of a fee is informed by New Jersey Rule of Professional Conduct 1.5, which provides factors courts should consider in such an analysis:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent.

N.J.R.P.C. 1.5(a); *see also Hamburg SUD N. Am., Inc. v. Karembri Distr. LLC*, No. 19-19370, 2023 WL 2535327, at *3 (D.N.J. Mar. 16, 2023) (quoting *Furst v. Einstein Moomiy, Inc.*, 182 N.J. 1, 22 (2004)) (explaining that "the eight factors listed in New Jersey Rule of Professional Conduct 1.5(a) 'must inform the reasonableness of a fee award ... in every case.'"); *Furst*, 182 N.J. at 21-22 (stating that "Rule of Professional Conduct 1.5(a) commands that 'a lawyer's fee shall be reasonable' in all cases, not just fee-shifting cases.").

Plaintiffs challenge Mr. Mintz's and Mr. Carroll's hourly rates, asserting that "this matter is a simple breach of contract case" and that "the rates sought should be significantly reduced so

as to be in-line with fees applicable to defending against an undisputed failure to repay a loan." [D.E. 76 at 8-9]. The First and Second Mintz Declarations provide that, during the relevant period, the hourly rates for Mr. Mintz were $1,025 per hour; $1,075 per hour; and $1,150 per hour. [D.E. 61 at 3, ¶ 9; D.E. 72 at 6-7, ¶ 11]. The hourly rates for Mr. Carroll were $620 per hour; $690 per hour; and $750 per hour. [*Id.*]. This Court has conducted a review to ascertain whether the rates are reasonable under the standard and "according to the prevailing market rates in the relevant community." *Maldonado v. Houstoun*, 256 F. 3d 181, 184 (3d Cir. 2001). The Court concludes that, given Mr. Mintz's and Mr. Carroll's respective educational backgrounds, experience, and expertise, as set forth in the First and Second Mintz Declarations,[4] their hourly billing rates are reasonable when measured against rates in the northern New Jersey legal market and that of the greater New York metropolitan area.[5]

## B. The Reasonableness of the Hours Worked

In addition to assessing the reasonableness of the hourly rates provided, courts analyzing a fee application must "review the time charged, decide whether the hours set out were

---

[4] Specifically, Mr. Mintz is a "Partner at McCarter & English," admitted to practice in New Jersey since 1985. [D.E. 61 at 3, ¶ 7; D.E. 72 at 6, ¶ 9]. He "graduated magna cum laude from Duke University" and "obtained a Juris Doctor from Vanderbilt University School of Law." [*Id.*]. As of 2025, Mr. Mintz "has been practicing law for 40 years." [D.E. 77 at 4, n. 5]. Mr. Carroll is a "Partner at McCarter & English" who has been practicing in New Jersey since 2014. [D.E. 61 at 3, ¶ 8; D.E. 72 at 6, ¶ 10]. He "graduated summa cum laude from Lehigh University" and "obtained a Juris Doctor from Fordham University School of Law." [*Id.*].

[5] When calculating the reasonableness of attorneys' fees, Courts in this District have referenced the Community Legal Services of Philadelphia fee schedule and the Laffey Matrix, which endeavors to provide a guide for hourly rates for attorneys in the Washington, D.C-Baltimore area. *See Rhee v. Client Servs., Inc.*, No. 19-12253, 2021 WL 5413990, at *4 (D.N.J. Nov. 18, 2021) (concluding that an hourly rate of $550 in 2021 was reasonable after conducting a lodestar analysis and considering NJRPC 1.5); *Rosner v. Faloni Law Grp.*, LLC, No. 20-10279, 2021 WL 933371, at *3 (D.N.J. Feb. 8, 2021).

The Community Legal Services of Philadelphia Attorney Fees schedule provides that, effective January 19, 2023, the "range of hourly rates" for "attorneys 11-15 year's experience" is "$420-525," and the "range of hourly rates" for "attorneys more than 25 year's experience" is "$735-850." *See Attorney Fees*, COMMUNITY LEGAL SERVICES OF PHILADELPHIA, https://clsphila.org/about-community-legal-services/attorney-fees/ (last accessed May 21, 2025). The Laffey Matrix provides that, for year June 1, 2024, to May 31, 2025, the hourly rate for an attorney 11-19 years out of law school is $948, and the hourly rate for an attorney 20 or more years out of law school is $1141. *See* LAFFEY MATRIX, http://www.laffeymatrix.com/see.html (last accessed May 21, 2025).

reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Research Grp. Of N.J. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433-34).

Here, the Court has carefully reviewed the time sheets, attached as Exhibit A to the First Mintz Declaration and Exhibit B to the Second Mintz Declaration, to determine whether the work performed falls within the purview of compensable activities, as defined by the September 6 Order, and if so, to consider whether the time spent on those tasks is reasonable. The compensable activities listed on the time sheets in both fee petitions are those directly related to Plaintiffs' overdue discovery and failure to abide by Court orders. The Court has grouped these entries into four categories:

1. **Communicating with Plaintiffs' Counsel and the Court about discovery deficiencies and failures to comply with Court Orders**

From June 1, 2023, to May 14, 2024, Mr. Mintz and Mr. Carroll logged a total of 4.6 hours communicating deficiencies with Plaintiffs' Counsel and the Court. These activities will be included in the fee award, but the Court finds that a total of 3.2 hours spent on these activities to be reasonable. Concerning this category of tasks, Mr. Carroll logged 1.5 hours when his rate was $625 per hour, which renders the amount of attorneys' fees requested at this rate $937.50. The Court finds 1 hour to be a reasonable amount of time for the activities logged when Mr. Carroll's hourly rate was $625. Mr. Carroll logged .7 hours for this category of tasks when his rate was $690 per hour, making the requested amount of attorneys' fees at this rate $483. The Court finds this amount of time for the activities logged when Mr. Carroll's hourly rate was $690 to be reasonable and will incorporate it when calculating the lodestar.

Mr. Mintz logged .9 hours "reviewing and revising written discovery and deficiency letter to plaintiffs" when his rate was $1,025 and accordingly requests $922.50. The Court finds

10

.5 hour to be a reasonable amount of time for this activity. Mr. Mintz logged 1.5 hours of time spent communicating with Mr. Lenney and the Court about discovery deficiencies when his rate was $1,075 per hour and accordingly requests $1,612.50 in attorneys' fees. The Court finds 1 hour to be a reasonable amount of time for communicating discovery deficiencies and failures to comply with Court Orders with Plaintiffs' Counsel and the Court when Mr. Mintz's hourly rate was $1,075.

Based on the foregoing, the Court calculates the lodestar of $2,695.50 for communicating discovery deficiencies with Plaintiffs' Counsel and the Court, comprised of the following:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Carroll | 1 | 625 | $625 |
| Carroll | .7 | 690 | $483 |
| Mintz | .5 | 1,025 | $512.50 |
| Mintz | 1 | 1,075 | $1,075 |

**2. Preparing the motion for discovery sanctions and petitions for attorneys' fees and preparing responses**

Mr. Mintz's and Mr. Carroll's work on the motion for discovery-related sanctions is compensable, but the Court finds that the 5.9 hours logged on the time sheet to prepare the sanctions motion and reply; the additional 2.3 hours spent to prepare the fee applications; and the 2.3 hours logged to prepare correspondence with the Court about sanctions must be reduced.

The time sheets state that on five separate occasions, Mr. Carroll worked on preparing, drafting, revising, and finalizing Defendant's brief and reply for the motion for sanctions. The Court finds that 3 hours is a reasonable amount of time to work on the motion and reply.

On two separate occasions in September 2024, Mr. Carroll worked 2.3 hours on preparing the first fee petition. The Court notes that Plaintiff appears to concede that these two entries were related to "pursuing" the motion for sanctions. [D.E. 76-1 at 7]. However, the Court finds 1.5 hours to be a reasonable amount of time to work on the first fee petition.

In November 2024, both Mr. Carroll and Mr. Mintz worked on reviewing Plaintiff's correspondences and preparing Defendant's own correspondence to the Court regarding sanctions. In the Court's view, the 1.2 hours Mr. Mintz spent reviewing Defendant's correspondences to the Court in November is duplicative of Mr. Carroll's earlier entry and must be omitted from the lodestar. Further, the Court finds 1 hour to be a reasonable amount of time to reimburse Defendant for the time Mr. Carroll spent drafting correspondence about the motion for sanctions to the Court.

Based on the foregoing, the Court calculates the lodestar of $3,855 for preparing the motion for discovery sanctions and fee petitions, comprised of the following:

| Activity | Attorney | Hours | Rate | Amount |
|---|---|---|---|---|
| Motion for Sanctions and Reply | Carroll | 3 | 690 | $2,070 |
| Attorneys' Fee Application | Carroll | 1.5 | 690 | $1,035 |
| Correspondence About Motion for Sanctions | Carroll | 1 | 750 | $750 |

### 3. Preparing for and Attending Discovery Conferences

The fee award requested by Defendant includes time Defense Counsel spent attending seven conferences and time spent drafting status letters to the Court in advance of these status conferences. Out of those seven conferences, the time sheets reflect time spent appearing at three discovery conferences at which Plaintiffs' counsel, Mr. Lenney, failed to appear. However, while

counsel's failure to appear undoubtedly contributed to the delay of discovery, the Court was forced to terminate these three conferences prematurely due to Mr. Lenney's absence. Furthermore, the time sheets reflect both Mr. Carroll and Mr. Mintz attended the December 14, 2023 conference at which Mr. Lenney failed to appear. In the Court's view, the one hour Mr. Carroll spent at this conference is duplicative of the time Mr. Mintz logged and must be omitted.

The amount of time Mr. Carroll logged for preparing and attending conferences when his hourly rate was $625 is 1.3 hours. The Court finds that .75 hour is a reasonable amount time for the activities logged when Mr. Caroll's rate was $625 per hour.

The amount of time Mr. Carroll logged for these activities when his hourly rate was $690, omitting the duplicative one hour logged on December 14, 2025, is 2.4 hours. The Court finds that 1 hour is a reasonable time for the activities logged when Mr. Caroll's rate was $690 per hour.

The amount of time Mr. Mintz logged for preparing and attending conferences when his rate was $1,075 per hour is 5.7 hours. The Court finds that 2 hours is a reasonable amount of time for the activities logged when Mr. Mintz's rate was $1,075 per hour.

On October 16, 2024, Mintz logged 1.1 hours for attending a status conference when his rate was $1,150 per hour. The Court notes that this 1.1 hour included an email to his client about the court conference. The Court finds that .5 hours is a reasonable time for attending the status conference on this date.

In sum, the Court finds that 4.25 hours is a reasonable amount of time to reimburse Defendant for Mr. Mintz's and Mr. Carroll's preparing for and participating in such conferences, some of which were spent dialing in and waiting before it became clear that Mr. Lenney would not appear.

13

Based on the foregoing, the Court calculates the lodestar of $3,883.75 for preparing for and attending conferences with the Court, comprised of the following:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Carroll | .75 | 625 | $468.75 |
| Carroll | 1 | 690 | $690 |
| Mintz | 2 | 1,075 | $2,150 |
| Mintz | .5 | 1,150 | $575 |

Other categories of attorney time, while generally related to discovery, will not be included in the lodestar calculation because they consist of tasks Plaintiff's counsel would have to undertake regardless of Defendants' noncompliance with discovery orders. These entries pertain to Defense Counsel's communications with their client, review of document production, review of Plaintiffs' counsel's correspondences, and communications with Plaintiffs' counsel about the general status of the case and discovery. While the Court appreciates that the latter three categories of tasks are essential to identifying deficiencies in Defendants' production, the examination of documents and other discovery provided by another party and communication with opposing counsel about the general status of the case are activities in which an attorney must engage as part of the ordinary course of litigation.

Accordingly, the Court finds that a total of 12.95 hours is a reasonable amount of time to devote to the compensable activities identified in the September 6 Order and has included these hours in its lodestar calculation provided in the tables above.

Based on the foregoing, the Court calculates a final lodestar of $10,434.25, comprised of the 12.95 hours multiplied by Mr. Mintz's and Mr. Carroll's respective hourly rates, as provided in the tables above.

### C. Apportionment of the Award

Finally, the Court must determine how much of Defendant's award will be apportioned between Plaintiffs and Mr. Lenney. Plaintiffs assert the majority of Defendant's recovery should be as against Mr. Lenney, because "Plaintiff timely provided Mr. Lenney with discovery responses and relied upon [him] to coordinate the production to Defendant." [D.E. 76 at 12]. In support, Plaintiffs rely on the Asdal Certification. [*See* D.E. 76 at 12; D.E. 76-4].

The Asdal Certification provides that, after this matter was removed to federal court, William Asdal "produced information totaling 50 pages to Tom Lenney . . . as part of Plaintiff [Asdal Holdings, LLC]'s Initial Disclosures" and "organized the response with an answer to each [of Defendant's document requests] and followed up with nearly 3 dozen files to Tom Lenney to supplement the answers." [D.E. 76-4 at 2-3]. The Asdal Certification avers that William Asdal complied with discovery requests, "ha[s] no knowledge as to why Mr. Lenney delayed any initial production until the end of August 2023, and then again in January 2024, nor why documents where not 'bates' labelled," and "had [he] been made aware of Mr. Lenney's actions . . . [he] would have sought to rectify it." [D.E. 76-4 at 3-5]. The Asdal Certification included as an exhibit a copy of Plaintiff Asdal Holdings, LLC's initial disclosures, dated April 18, 2023, and Plaintiff Asdal Holdings, LLC's responses to requests for the production of documents, dated June 1, 2023. [D.E. 76-4 at 3 (providing that William Asdal "coordinated the production of [Plaintiff Asdal Holdings, LLC]'s discovery with Thomas Lenney" and referencing responses to document requests); D.E. 76-7; D.E. 76-9]. In further support, Plaintiff's opposition to Defendant's fee petitions and the Asdal Certification both reference an exhibit in Defendant's April 15, 2024 motion for sanctions—a November 27, 2023 email, wherein William Asdal

15

addresses Mr. Lenney and provides, "[t]his is the response I sent you (attached) on June 1, 2023 containing the answers and supplemental documents." [*See* D.E. 34-2 at 43, 51].

In response, Defendant argues that "Mr. Lenney and Mr. Graffeo each detailed a pattern of Plaintiff's willful refusal to cooperate with discovery or respond to emails and telephone calls." [D.E. 77 at 1]. As an example, Defendant explains that before Plaintiffs Restless Creation, LLC, William Asdal, and Annie Asdal were dismissed, all "failed to ever respond to a single discovery demand in this case," and "Mr. Lenney advised the Court during a status conference that Plaintiffs refused to cooperate with counsel, and that Mr. Lenney's inability to comply with his discovery obligations was due to his clients' disagreements over the direction of this litigation." [*Id.* at 2]. As Defendant explains, on April 19, 2024, Mr. Lenney filed a letter, which stated "[a]ny and all delay in providing discovery responses was due to the fact that multiple plaintiffs were not responsive to counsel." [*See id.*; D.E. 35]. In that letter, Mr. Lenney explained the "situation has been remedied and rectified as a Voluntary Dismissal has been filed with the Court as to such parties." [*See* D.E. 35].

Although the record shows Mr. Lenney was derelict in his obligations to conduct discovery with diligence, and failed to attend several status conferences, the record also supports a conclusion that, during the period relevant to the sanctions imposed, Mr. Lenney was not, as Plaintiffs assert, solely responsible for any delay, and that instead, former Plaintiffs Restless Creation, LLC, William Asdal, and Annie Asdal were at least partially responsible for the delinquent discovery and delay that gave rise to Defendant's motion for sanctions. The Asdal Declaration and exhibits do not contradict or call this conclusion into question, as they appear to speak only to what Plaintiff Asdal Holdings, LLC may have provided. [D.E. 76-4 at 3; D.E. 76-7; D.E. 76-9]. Indeed, the September 6 Order and Mr. Carroll's certification to the motion for

16

sanctions noted indications of discovery delay attributable to Plaintiffs Restless Creation, LLC, William Asdal, and Annie Asdal before their claims were dismissed in early 2024. [*See* D.E. 56 at 3; D.E. 34-2 at 1-2].

Importantly, even after the Court's September 6 Order imposing sanctions on Plaintiffs; even after Plaintiffs Restless Creation, LLC, William Asdal, and Annie Asdal were no longer parties to this matter; and even after Mr. Lenney was disassociated from WGS, the record demonstrates a continued pattern of unresponsiveness on the part of Plaintiffs. [*See* D.E. 72 at 9-17; D.E. 77 at 2; D.E. 62 ("[O]ur firm has not been able to obtain direction from Plaintiffs as to not only how to proceed, but whether Plaintiffs would like to continue to retain our firm to represent their interests in this matter."); D.E. 64 ("Plaintiff has not provided approval or consent to the filing of the aforesaid opposition."); D.E. 68 (reporting on November 8, 2024 that WGS was "finally able to speak with Plaintiff . . .")].

In sum, the record firmly establishes that the sanctionable misconduct here—failure to comply with discovery obligations, failure to abide by court orders, and failure to appear at conferences—is in part attributable to Plaintiffs and in part attributable to Mr. Lenney. Accordingly, the Court finds that the amount awarded herein to Plaintiffs shall be borne as follows: Plaintiffs Asdal Holdings, LLC; Restless Creation, LLC; William Asdal, and Annie Asdal responsible, jointly and severally, for 70% of the award and Mr. Lenney responsible, individually, for 30% of the award.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court awards Defendant $10,434.25 as a discovery sanction against Plaintiffs and their former counsel Mr. Lenney, in accordance with the Court's

17

September 6 Order, to be apportioned at a ratio of 70% to Plaintiffs and 30% to Mr. Lenney. Therefore,

**IT IS** on this 21st day of May 2025,

**ORDERED** that, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), Plaintiffs and their prior counsel Thomas Lenney are sanctioned in the amount of $10,434.25. Seventy percent of the sanction award, or $7,303.98, shall be borne by Plaintiffs, jointly and severally, and thirty percent of the sanction award, or $3,130.27, shall be borne by Mr. Lenney, individually; and it is further

**ORDERED** that Plaintiffs, through their current counsel of record, shall remit their portion of the sanctions award to Plaintiff's counsel no later than July 7, 2025; and it is further

**ORDERED** that Mr. Lenney shall remit his portion of the sanctions award to Plaintiff's counsel no later than July 7, 2025; and it is further

**ORDERED** that a copy of this Order shall be served by Defendant on all parties and on Mr. Lenney, by email and regular mail, within five days of its entry.

                                                    /s/ *André M. Espinosa*
                                                  ANDRÉ M. ESPINOSA
                                                  United States Magistrate Judge